UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BILLY FRANCINE KING,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**
18-CV-292S

1. Plaintiff Billy Francine King challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since May 31, 2010, due to fibromyalgia and post-traumatic stress disorder ("PTSD"). Plaintiff contends that her impairments render her unable to work, and thus, that she is entitled to disability benefits under the Act.

2. Plaintiff applied for Title II Social Security Disability benefits on February 25, 2013, alleging a disability onset date of May 31, 2010. Plaintiff appeared pro se at hearings on August 26 and December 17, 2015. Thereafter, the ALJ issued a favorable decision on January 5, 2016, finding that Plaintiff was disabled and entitled to benefits. But on March 10, 2016, the Appeals Council reversed the ALJ's decision and remanded the case for further proceedings. Plaintiff then appeared at a third hearing, again pro se, on October 26, 2016. Two months later, on December 30, 2016, the ALJ denied Plaintiff's application. Plaintiff thereafter sought review by the Appeals Council, which denied her

1

request on January 3, 2018.  Plaintiff timely filed the current action on February 26, 2018, challenging the Commissioner's final decision.[1]

3. On January 14, 2019, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure.  (Docket No. 14.)  On March 15, 2019, Defendant also filed a Motion for Judgment on the Pleadings.  (Docket No. 17.)  Plaintiff filed a reply on March 29, 2019, at which time this Court took the motions under advisement without oral argument. (Docket No. 18.)  For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded to the Commissioner for further proceedings.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] The ALJ's December 30, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

has such an impairment, the [Commissioner] will consider him
disabled without considering vocational factors such as age,
education, and work experience; the [Commissioner]
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful activity.
Assuming the claimant does not have a listed impairment, the
fourth inquiry is whether, despite the claimant's severe
impairment, he has the residual functional capacity to perform
his past work. Finally, if the claimant is unable to perform his
past work, the [Commissioner] then determines whether there
is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since February 25, 2013, the application date (R. at 32[2]); (2) Plaintiff's fibromyalgia and anxiety are severe impairments (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[2] Citations to the underlying administrative record are designated as "R."

4

in the C.F.R. (id.); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b)[3], with exceptions[4] (R. at 33-4); (5) Plaintiff is not capable of performing past relevant work ("PRW") as an executive secretary, new patient administrator, or bus driver, but Plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 38-9). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period.

10. Plaintiff argues that the ALJ erred by failing to develop the record, failing to comply with the Appeals Council's remand order, and failing to protect her pro se rights. Indeed, multiple related errors require remand.

11. First, the ALJ erred by failing to re-contact Plaintiff's treating physician, Maritza Baez, M.D. In his favorable decision, the ALJ relied heavily on Dr. Baez's opinion that Plaintiff could not work, affording it "great weight" and finding that it was supported by treatment notes, consistent with the record, and based on Dr. Baez's long-term treating relationship with Plaintiff. (R. at 179, 181.) The Appeals Council reversed the ALJ's

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

[4] The ALJ found that Plaintiff had the RFC to perform light work, except that after every 1 hour of sitting she must be allowed to stand for 5 minutes, and after every 1 hour of walking or standing, she must be allowed to alternate sitting for 5 minutes. She can frequently climb ramps or stairs; can occasionally climb ladders, ropes, or scaffolds; can perform no repetitive stopping, kneeling or crouching; and can never crawl. She can never be exposed to unprotected heights, extreme cold, and extreme heat, and she can never handle, sell, or prepare controlled narcotic substances or alcoholic beverages. She is limited to the performance of simple routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work); she can appropriately respond with supervisors frequently; she can appropriately respond with the public and co-workers no more than incidentally, meaning 1/6 of a shift, as necessary to perform assigned work with visible or audible contact permitted at other times but no interaction is required; and she is limited to simple work-related decisions. Time off-task can be accommodated by normal breaks. She will be absent once per month, at two-hour intervals each, for pre-arranged behavioral health treatment appointments, including vicinity travel to and from the worksite. (R. at 33-4.)

decision, particularly his reliance on Dr. Baez, and directed on remand that the ALJ, *inter alia*, develop and evaluate Dr. Baez's opinion further. (R. at 187.) In particular, the Appeals Council found that Dr. Baez did not sufficiently explain how she reached her determination that Plaintiff was permanently disabled or adequately explain how Plaintiff's fibromyalgia would specifically limit her capacity to perform work-related activities. (Id.) Among its other directives, the Appeals Council suggested that the ALJ, as appropriate, request treating sources to provide additional evidence and/or further clarification of their opinions, and further suggested that the ALJ enlist the assistance of a representative to help develop evidence from the treating sources. (R. at 188.) This order relates directly to Dr. Baez and recognizes the difficulties Plaintiff may encounter in trying to further develop the record on her own pro se.

12. But despite the Appeals Council's rather clear instructions, the ALJ did not re-contact Dr. Baez or seek further clarification of her opinion. Instead, he noted for the record that he had discussed the need to obtain further support for Dr. Baez's opinion with Plaintiff, reviewed further medical records from 2015, and confirmed that Plaintiff had not submitted anything additional records. (R. at 49.) He then concluded that he had "the complete file" without ever contacting Dr. Baez. (R. at 49-50.)

13. It is an "ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits" because disability determinations are investigatory and not adversarial in nature. Englert v. Colvin, No. 15-CV-564, 2016 WL 3745854, at *3-4 (W.D.N.Y. July 8, 2016) (quoting Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004)). Thus, "[a]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the record." See Messina v. Comm'r of Soc. Sec.

Admin., No. 17-CV-1598, 2018 WL 4211602, at *4-5 (2d Cir. Sept. 5, 2018) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)); see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (Because [doctor's] latest opinion provided little valuable information regarding Plaintiff's functional capacities, at a minimum, the ALJ likely should have contacted [doctor] and sought clarification of [her] report.").

14. Here, the Appeals Council identified clear gaps in the medical and opinion testimony of Plaintiff's treating physician, Dr. Baez. The ALJ should have obtained additional information from Dr. Baez, as suggested by the Appeals Council, and should not have rendered an opinion without it. This is particularly so in this case, where the ALJ previously fully credited Dr. Baez's medical evidence and opinion.

15. Second, and relatedly, the ALJ erred by failing to comply with the Appeals Council's remand order. As noted above, the Appeals Council specifically instructed the ALJ to further develop and evaluate Dr. Baez's opinion. (R. at 187.) It even identified the deficiencies in Dr. Baez's opinion that required further development: she did not sufficiently explain how she reached her determination that Plaintiff was permanently disabled or adequately explain how Plaintiff's fibromyalgia would specifically limit her capacity to perform work-related activities. (Id.) The ALJ's failure to comply with this mandate is independent error. See Colton v. Berryhill, No. 16-CV-615(MAT), 2018 WL 3569930, at *3 (W.D.N.Y July 25, 2018) (remanding for failure to comply with the Appeals Council's remand order); Bell v. Colvin, No. 5:15-CV-01160, 2016 WL 7017395, at *8 (N.D.N.Y. Dec. 1, 2016) (finding that failure to comply with Appeals Council's order is reversible legal error).

16.     Third, the ALJ erred by failing in his heightened duty to a pro se claimant. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (finding that an ALJ's duties are heightened when a claimant waives counsel and proceeds pro se).  When a claimant proceeds pro se, the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).  And as particularly relevant here, an ALJ cannot reject a treating physician's opinion as conclusory without giving a pro se claimant notice: "Before the ALJ can reject an opinion of a pro se claimant's treating physician because it is conclusory, basic principles of fairness require that he inform the claimant of his proposed action and give him an opportunity to obtain a more detailed statement." Id. (citing Dorman v. Harris, 633 F.2d 1035, 1040 (2d Cir. 1980)).

17.     Here, the ALJ failed to "scrupulously and conscientiously" probe Plaintiff's case by failing to fully develop the record, despite explicit instructions to do so.  Further, he gave Plaintiff no notice that he would reject Dr. Baez's opinion, which he previously fully accepted, in line with the Appeals Council's decision.  (R. at 37.)  These errors were particularly prejudicial since Plaintiff repeatedly expressed her willingness to supplement the record and provide all necessary documentation throughout her proceedings.  (R. at 444-445, 603, 611.)  Given this Court's own obligation to protect pro se rights, see Moran, 569 F.3d at 112 (reviewing court must "make a searching investigation of the record to make certain that the claimant's rights have been adequately protected"), it finds that these errors require remand.[5]

---

[5] In addition to challenging the ALJ's decision on the grounds set forth above, Plaintiff also argues that the Appeals Council improperly considered new evidence that she submitted in support of her request for review.  The ALJ should consider this new evidence in the ordinary course on remand, as appropriate.

8

18. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. The ALJ must fully comply with the Appeals Council's remand order, and must, at a minimum, contact Dr. Baez to obtain further evidence and clarification of her opinion and her assessment of how Plaintiff's fibromyalgia limits her ability to perform work-related activities. Plaintiff's motion for judgment on the pleadings is granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   October 1, 2019
         Buffalo, New York

                                                s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                             United States District Judge